IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLAIR DOUGLASS,<br><br>                      Plaintiff,<br><br>    v.<br><br>HEDLEY AND BENNETT, INC.,<br><br>                      Defendant. | Lead Case No. 2:21-cv-01165-AJS |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. LEGAL STANDARD............................................................................................................1

III. SUMMARY OF THE COMPLAINT....................................................................................1

IV. ARGUMENT.........................................................................................................................2

    A. Hedley and Bennett Is a Public Accommodation .......................................................2

    B. The Plain Meaning of the Text of Title III Does Not Require Public
       Accommodations to Operate A Physical Location.....................................................3

    C. The Court is not at Odds with the Third Circuit .........................................................6

    D. If Anything, The Third Circuit is at Odds with the Supreme Court ..........................7

V. CONCLUSION......................................................................................................................8

Plaintiff Blair Douglass ("Mr. Douglass") opposes the Motion to Dismiss submitted by Defendant Hedley and Bennett, Inc. ("Hedley and Bennett") for the following reasons.

## I. INTRODUCTION

Mr. Douglass brings this action because Hedley and Bennett has denied and will continue to deny Mr. Douglass equal access to Hedley and Bennett's online store, a violation of the rights guaranteed by Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 to 12189 ("ADA"). Instead of using its resources to ensure all consumers have full and equal access to its online store, Hedley and Bennett advances a legal argument the Court has rejected at least seven times. The Court should deny Hedley and Bennett's motion because it says nothing the Court has not considered, and rejected, previously.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a Complaint may be dismissed for "failure to state a claim upon which relief can be granted." Detailed factual pleading is not required, but a complaint must include sufficient factual allegations that, when taken as true, set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While plausibility does not require a showing of probability, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), it does require "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The plausibility analysis is "context-specific" and requires courts to draw on "judicial experience and common sense." *Id*. at 679.

## III. SUMMARY OF THE COMPLAINT

Mr. Douglass alleges he is blind, and that, as a result of his blindness, he uses a screen reader to access digital information, like a website. Compl., ECF 1 at ¶¶ 19. Mr. Douglass also alleges that Hedley and Bennett, a retailer that "sells aprons, apparel, accessories, and more to

1

consumers[,]" denies blind consumers access to its online store because the store is not compatible with screen readers. *Id*. at ¶¶ 15, 41, 45. For example, Mr. Douglass alleges that Hedley and Bennett charges blind consumers 10% more than shoppers who can see because Hedley and Bennett fails to make some online promotions perceivable by screen readers. *Id*. at ¶ 44(a). Mr. Douglass alleges barriers like this deny him full and equal access to Hedley and Bennett's store and deter his patronage. *Id.* at ¶¶ 45, 46. Still, Mr. Douglass alleges he will return to the store, where he will continue to encounter discrimination unless Hedley and Bennett modifies its policies and practices consistent with the relief Mr. Douglass seeks. *Id*. at ¶¶ 47, 48.

Consistent with public policy encouraging the resolution of "dispute[s] informally by means of a letter[,]" *see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006), which "prelitigation solutions [are] clearly, the most expedient and cost-effective means of resolving" website accessibility claims, *see Sipe v. Am. Casino & Ent. Properties, LLC*, 2016 WL 1580349, *2-3 (W.D. Pa. Apr. 20, 2016) (Schwab, J.), Douglass contacted Defendant about its inaccessible Digital Platform to resolve his discrimination claims before commencing litigation, That attempt was unsuccessful. Compl. at ¶ 43.

**IV.    ARGUMENT**

The Court has often analyzed Title III's application to website accessibility claims. As it has done before, the Court should reject Hedley and Bennett's argument that Title III does not apply to "online-only" retailers.

    **A.    Hedley and Bennett Is A Public Accommodation.**

The general anti-discrimination mandate of Title III of the ADA broadly prohibits "public accommodations" from denying individuals with disabilities "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" provided by any public

accommodation. 42 U.S.C. § 12182(a). "Public accommodation" is defined to include a "clothing store." 42 U.S.C. § 12181(7)(E).

Based on the allegations of the Complaint, Hedley and Bennett qualifies as a "public accommodation" under Title III. Mr. Douglass alleges that Hedley and Bennett "sells aprons, apparel, accessories, and more to consumers" at an online store, which digital property Hedley and Bennett owns, operates, and controls, located at https://www.hedleyandbennett.com/. Compl. at ¶¶ 23-25. Accepting these allegations as true, Hedley and Bennett meets the definition of a "clothing store" to qualify as a "public accommodation" under Section 12181(7)(E) of Title III.

### B. The Plain Meaning of the Text of Title III Does Not Require Public Accommodations to Operate A Physical Location.

Ignoring the plain meaning of Title III of the ADA, Hedley and Bennett asks the Court to impose a requirement not found in Title III's text. Specifically, Hedley and Bennett argues that Title III only applies to businesses that operate physical locations. The Court should reject this argument, as it has done in the past, because the brick-and-mortar requirement Hedley and Bennett seeks to impose does not appear in Title III.

To date, the Court has rejected Hedley and Bennett's argument at least seven times. *See Douglass v. '47 Brand, LLC*, No. 2:20-cv-00491-AJS, ECF 138 (W.D. Pa. Aug. 21, 2020) (denying request for interlocutory appeal so that defendant could present the brick-and-mortar issue to the Third Circuit); *Douglass v. '47 Brand, LLC*, No. 2:20-cv-00491-AJS, ECF 92 (W.D. Pa. July 8, 2020) ("*'47 Brand*"); *Clark v. McCormick & Co., Inc.*, Case No. 1:19-cv-00301-AJS, ECF 99 (W.D. Pa. Jan. 16, 2020); *West v. DocuSign, Inc.*, 2019 U.S. Dist. LEXIS 138379 (W.D. Pa. Aug. 15, 2019) ("*DocuSign*"); *Suchenko v. ECCO USA, Inc.*, 2018 U.S. Dist. LEXIS 139050 (W.D. Pa. Aug. 16, 2018); *Suchenko v. ECCO USA, Inc.*, 2018 U.S. Dist. LEXIS 129862 (W.D. Pa. Aug. 2, 2018);

and *Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp 908 (W.D. Pa. 2017) ("*Lettuce Entertain You*").

These decisions are correct because they apply the plain meaning of Title III's text to reject a physical nexus requirement that does not appear in the text of the statute and because they comport with the statutory analysis the Supreme Court outlined in *Bostock v. Clayton Cty.*, 2020 U.S. LEXIS 3252 (June 15, 2020). In *Bostock*, Justice Gorsuch made clear that plain terms control even when the legislature's imagination might not anticipate every consequence (like the proliferation of e-commerce):

> Those who adopted the Civil Rights Act might not have anticipated their work would lead to this particular result. Likely, they weren't thinking about many of the Act's consequences that have become apparent over the years, including its prohibition against discrimination on the basis of motherhood or its ban on the sexual harassment of male employees. But the limits of the drafters' imagination supply no reason to ignore the law's demands. When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit.
>
> …
>
> Rather than suggesting that the statutory language bears some other *meaning*, the employers and dissents merely suggest that, because few in 1964 expected today's *result*, we should not dare to admit that it follows ineluctably from the statutory text. When a new application emerges that is both unexpected and important, they would seemingly have us merely point out the question, refer the subject back to Congress, and decline to enforce the plain terms of the law in the meantime.
>
> That is exactly the sort of reasoning this Court has long rejected. Admittedly, the employers take pains to couch their argument in terms of seeking to honor the statute's "expected applications" rather than vindicate its "legislative intent." But the concepts are closely related. One could easily contend that legislators only intended expected applications or that a statute's purpose is limited to achieving applications foreseen at the time of enactment. However framed, the employer's logic impermissibly seeks to displace the plain meaning of the law in favor of something lying beyond it.

*Bostock*, 2020 U.S. LEXIS 3252, at *9-10, *47-48 (emphasis in the original); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588 (3d Cir. 2020) (refusing to "[i]nject[] a writing requirement" that did not appear in the text of the statute at issue).

Here, Mr. Douglass alleges he is a person with a disability and that Hedley and Bennett is a clothing store that discriminated against him. Compl. at ¶¶ 15, 41, 45. Because the plain text of Title III prohibits a "clothing store," like Hedley and Bennett, from discriminating against persons with disabilities, like Mr. Douglass, *Bostock* and *Riccio* confirm no further analysis is appropriate. 42 U.S.C. §§ 12181(7)(E), 12182(a). "[W]hen the meaning of the statute's terms is plain, [the court's] job is at an end." *Bostock*, 2020 U.S. LEXIS 3252, at *43-44; *see also Riccio*, 954 F.3d at 588 ("And when a statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotations omitted). Litigants "are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Id.* at *44.

Judge Lanzillo seems to have agreed with this analysis in another website accessibility case. In determining whether Title III applies to websites, generally, Judge Lanzillo explained:

> Some insight regarding this issue might be found in the Supreme Court's recent decision in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020), which held that even if Congress may not have had discrimination based on sexual orientation or transgender status in mind when it enacted Title VII of Civil Rights Act of 1964, its ban on discrimination "because of sex" nevertheless protects gay, lesbian and transgender employees. *Id*. at 1747. The Court held that where Congress establishes a broad rule without any exceptions, "courts apply the broad rule" because federal jurisprudence recognizes no "canon of donut holes," in which Congress's failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception." *Id*. <u>Likewise, although the only "public accommodations" known to Congress when it adopted the ADA were buildings and ancillary physical facilities, it does not follow that such accommodation are limited to such structures</u>.

*Murphy v. Bob Cochran Motors, Inc.*, No. 19-cv-239, 2020 U.S. Dist. LEXIS 139887, at *20 n.5 (W.D. Pa. Aug. 4, 2020) (emphasis added).

The Court should reject Hedley and Bennett's claim that the ADA only protects patrons of physical accommodations and hold, as it has done before, and as Judge Lanzillo suggests, that consumers who are blind are entitled to full and equal access to a retailer's goods and services, regardless of whether those goods and services are provided at a physical location or online.[1]

### C.   The Court is not at Odds with the Third Circuit.

Hedley and Bennett cites *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998) and *Peoples v. Discover Financial Services*, 387 Fed. Appx. 79 (3d Cir. 2010) to argue "Title III is limited to physical places." ECF 29 at 10. The Court has explained at length why these cases are not controlling.

> In both of the above cases, the Court of Appeals did not wish to expand the meaning of "place of public accommodation" to include places where: (1) an insurance policy was issued or implemented, or (2) a credit card company's processing terminals were located. Importantly, however, in both *Ford* and *Peoples*, the alleged discrimination occurred at a location where neither the insurance carrier in *Ford*, nor the credit card company in *Peoples*, had ownership or possession, or exercised control. Conversely, in the instant matter, the alleged discrimination has taken place on property that AmeriServ owns, operates and controls—the AmeriServ website.
>
> This Court finds that because AmeriServ owns, operates, and controls the property through which persons access its services, this matter is distinguishable from the Ford and Peoples cases.

---

[1] Although unnecessary here, were the Court to consider Title III's "expected applications," it would find "the legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology. *See e.g.*, H.R. Rep. 101-485 (ii), at 108 (1990) ('The Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times.')." *Nat'l Ass'n of the Deaf v. Netflix*, 869 F. Supp. 2d 196, 200-01 (D. Mass. 2012). The House Committee report also explains that that "technological advances can be expected to further enhance options for making meaningful and effective opportunities available to individuals with disabilities" and "[s]uch advances may require public accommodations to provide auxiliary aids and services in the future which today would not be required." H.R. Rep. 101-485 (ii), at 108. *See also Gniewkowski*, 251 F. Supp. 3d at 915-16 (explaining ADA's purpose).

*Gniewkowski*, 251 F. Supp. 3d at 916-18. These decisions are correct and the Court should reject Hedley and Bennett's attempt to argue otherwise.

Hedley and Bennett argues Plaintiff's application of *Gniewkowski*, which is the same application the Court employed in *DocuSign* and *'47 Brand* (where the parties agreed those defendants lacked physical property open to the public) is "circular logic." ECF 29 at 9. It is mistaken. *Gniewkowski* stands for the simple proposition that the ADA applies to public accommodations, like banks and clothing stores, and prohibits them from discriminating on the properties they own, operate, or control, like websites. The Court should reject Hedley and Bennett's more limited understanding of the Court's prior decisions.

### D. If Anything, the Third Circuit is at Odds with the Supreme Court.

Even if Hedley and Bennett's reading of outdated, factually distinct Third Circuit case law were correct, superseding decisions from the Supreme Court, like *Bostock*, compel the Court to deny Hedley and Bennett's motion still. In *Murphy*, Judge Lanzillo described the import of another recent decision from the Supreme Court and its relevance to Title III:

> The Supreme Court's decision in *South Dakota v. Wayfair*, 138 S. Ct. 2080, 2091, 201 L. Ed. 2d 403 (2018) is also potentially instructive. There the Court overruled an earlier precedent which held that states could not require out-of-state retailers to collect and remit sales tax on purchases made within the state unless the retailer "maintained a physical presence" in that state. *Id*. (overruling *Quill Corp. v. North Dakota*, 504 U.S. 298, 301, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992)). In doing so, the Supreme Court threw significant shade on the "physical presence rule," finding it was an "arbitrary, formalistic distinction." *Id*. at 2092. The Court noted that it wanted instead to create a rule "appropriate to the twenty-first century, not the nineteenth." *Id*. (quotation omitted). Specifically relevant to the issue in this case, the Court noted that "[m]odern e-commerce does not align analytically with a test that relied on the sort of physical presence defined by *Quill*," and that the physical presence rule "simply makes no sense." *Id*. at 2094-95. *See also Wilson v. Twitter*, 2020 U.S. Dist. LEXIS 110800, 2020 WL 3410349, at *8 (S.D. W.Va. May 1, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 104910, 2020 WL 3256820 (S.D.W. Va. June 16, 2020). Obviously, *Wayfair* was a tax case. But in *Wayfair*, the Supreme Court strongly intimates that artificial distinctions between

"virtual" and "physical" commerce originally created during the early years of the internet are no longer tenable.

*Murphy*, 2020 U.S. Dist. LEXIS 139887, at *20 n.5.

No matter what Hedley and Bennett believes the Third Circuit case law to have been in the past, it is not controlling today. The Supreme Court did away with "arbitrary, formalistic distinctions" between brick-and-mortar and online retailers because those distinctions "make[ ] no sense" in a "twenty-first century" marketplace, where Hedley and Bennett chooses to operate online, only. And like the brick-and-mortar clothing stores before it, Hedley and Bennett cannot freely exclude shoppers by failing to accommodate their disabilities today.

## V.   CONCLUSION

For the foregoing reasons, Mr. Douglass respectfully requests the Court deny Hedley and Bennett's motion in its entirety.

Respectfully Submitted,

Dated: October 14, 2021

*/s/ Kevin Tucker*

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
Fax. (412) 626-7101
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Counsel for Plaintiff*

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, October 14, 2021, a true and correct copy of the foregoing Notice of Settlement was filed on the Court's CM/ECF system and will be served upon all counsel of record.

                                                  Respectfully Submitted,

Dated: October 14, 2021                    */s/ Kevin Tucker*
                                                  Kevin W. Tucker (He/Him)