IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLAIR DOUGLASS,<br>          Plaintiff,<br>v.<br><br>HEDLEY AND BENNETT INC.,<br>          Defendant. | C.A. No. 2:21-cv-1165-AJS<br><br>LEAD |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, William Painter Inc. ("William Painter") by and through its undersigned counsel, hereby moves to dismiss the Complaint (Doc. No. 1) filed by Plaintiff, Blair Douglass ("Plaintiff").[1]

## PRELIMINARY STATEMENT

Plaintiff brings a claim for disability discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("Title III" or the "ADA") and alleges that he is unable to fully experience William Painter's website. Plaintiff claims that this is a violation of the ADA, but he has failed to state a cognizable Title III claim against William Painter, an online-only retailer, as William Painter is outside the scope of Title III requirements, requiring dismissal of his Complaint with prejudice.  William Painter has explained this deficiency to Plaintiff's counsel to obtain a Stipulation of Dismissal under Federal Rule of Civil Procedure 41, but the Parties could not reach an agreement, necessitating the filing of this Motion.

## FACTUAL BACKGROUND

William Painter is an online retailer. It sells sunglasses and other apparel and accessories online. It does not have physical stores or other locations accessible to the public. William Painter

---

[1] William Painter and counsel are aware of this Court's views on the applicability of Title III to websites as set forth in Doc. No. 33. Nevertheless, counsel finds this Motion necessary to preserve the arguments asserted herein for appellate review.

1

operates entirely online though its website, www.williampainter.com (the "Website"). Doc. No. 1 at ¶ 23-4.

According to the Complaint, Plaintiff is visually impaired and uses a screen reader to interact with the internet. Doc. No. 1 at ¶ 19. Plaintiff alleges that he visited the Website using his mobile phone but states no reason why he did so. *Id.* at ¶ 37. Plaintiff further alleges that he was unable to effectively use the Website because it failed to comply with certain content accessibility guidelines. *Id.* at ¶¶ 41-2. Based on the alleged inability to access the Website, Plaintiff brought the instant action asserting that William Painter discriminates against him in violation of Title III.

## ARGUMENT

### I. Standard of Review

Complaints "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do," and a plaintiff must plead more than "labels and conclusions." *Twombly*, 550 U.S. at 555. Furthermore, courts are not bound to accept a plaintiff's legal conclusions when conducting this inquiry. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### II. Title III Does Not Apply to Businesses, Such as William Painter, With No Nexus to a Physical Place.

"To state a claim under the ADA, Plaintiffs must show that the alleged discrimination involves the services of a 'place of public accommodation.'" *Gniewkowski v. Lettuce Entertain You Enters.*, 251 F. Supp. 3d 908, 915 (W.D. Pa. 2017) (Schwab, J.).

The weight of national authority holds that places of public accommodation must be physical spaces, or at least have a nexus to a physical space. *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 533-36 (5th Cir. 2016) (holding application of *noscitur a sociis*, a

principle of statutory interpretation providing that words in a statute should be construed with reference to the words around them, as well as analysis of DOJ regulations and legislative history, supported limiting Title III to physical places); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("The clear connotation of the words in [Title III] is that a public accommodation is a physical place."); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114-15 (9th Cir. 2000) (adopting view of Third and Sixth Circuits that a public accommodation under Title III is a physical place); *Rendon v. Valleycrest Prods.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (requiring nexus between physical place and discriminatory restrictions on access of the physical space by disabled individuals).

The ADA was not intended to cover every business in the United States, but rather applies to a limited set of activities affecting commerce. *Magee*, 833 F.3d at 532-33; 42 U.S.C. § 12181(7) (Lexis 2021). It is well-established that the list of public accommodations in Title III is exhaustive. *See Magee*, 833 F.3d at 535 (examining legislative history to determine the exhaustive nature of Title III list).

The Third Circuit Court of Appeals has recognized that a split in authority exists regarding the scope of "public accommodation." *Peoples v. Discover Fin. Servs.*, 387 F. App'x 179, 183 (3d Cir. 2010). Nevertheless, the Third Circuit Court has held "[o]ur court is among those that have taken the position that the term is limited to physical accommodations." *Id.* (citing *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613-14 (3d Cir. 1998)). Thus, in order for Title III to apply, there must be "at the very least some 'nexus' between the physical place of public accommodation and the services denied in a discriminatory manner." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 120 (3d Cir. 1998) (citing *Ford*, 145 F.3d at 613, and *Parker*, 121 F.3d at 1011).

Notably, neither *Peoples*, *Ford*, nor any other Third Circuit Court case has considered the direct question of whether a website constitutes a place of public accommodation for purposes of Title III. *See Murphy v. Charles Tyrwhitt*, No. 1:20-cv-00056 (Erie), 2020 U.S. Dist. LEXIS 222540, at *24-25, 2020 WL 8513583 (W.D. Pa. Nov. 25, 2020) (Lanzilo, J.) ("the Third Circuit has not specifically addressed whether a website, either standing alone or in association with a physical location, can be considered a public accommodation under the ADA.").

When considering application of Title III to websites, courts in this circuit applying the Third Circuit Court's decisions in *Peoples* and *Ford* have found "[a] website, by itself, is not a physical location and therefore does not constitute a place of public accommodation under [Title III]." *Mahoney v. Bittrex, Inc.*, No. 19-3836, 2020 U.S. Dist. LEXIS 5746, at *5, 2020 WL 212010 (E.D. Pa. Jan. 14, 2020); *see also Walker v. Sam's Oyster House, LLC*, No. 18-193, 2018 U.S. Dist. LEXIS 158439, at *5, 2018 WL 4466076 (E.D. Pa. Sep. 17, 2018); *Tawam v. APCI Fed. Credit Union*, No. 5:18-cv-00122, 2018 U.S. Dist. LEXIS 131185, at *18, 2018 WL 3723367 (E.D. Pa. Aug. 3, 2018) (finding sufficient nexus between credit union and its website).

This Court has also examined the applicability of Title III to websites. In *Gniewkowski*, this Court denied defendant AmeriServ Financial Bank's motion to dismiss, finding that AmeriServ's website was subject to Title III. 251 F. Supp. at 918. Unlike here, "AmeriServ own[ed] and operate[d] 'brick and mortar' retail locations throughout Pennsylvania." *Id.* at 912. "AmeriServ [did] not dispute that it is a bank and is, therefore, a place of public accommodation." *Id.* at 915. Therefore, AmeriServ's website could be found to have constituted "goods, services, facilities, privileges, [or] advantages," of an admitted public accommodation. 42 U.S.C. § 12182(a). Application of Title III to the website was thus consistent with the Third Circuit Court's precedent because there was an undisputed nexus between the website and a physical public

4

accommodation. The brick-and-mortar bank in *Gniewkowski* (complete with retail locations and ATMs) is a far cry from William Painter, an online-only sunglass retailer.

Other cases where this Court has evaluated Title III claims against websites have involved websites with nexuses to physical public accommodations distinguishable from William Painter because William Painter has no physical space. *Suchenko v. ECCO USA, Inc.*, 2018 U.S. Dist. LEXIS 139050 (W.D. Pa. Aug. 16, 2018) (defendant Purple Innovation LLC sold mattresses in over 2000 brick-and-mortar stores across the country); *Suchenko v. ECCO USA, Inc.*, 2018 U.S. Dist. LEXIS 129862 (W.D. Pa. Aug. 2, 2018) (defendant Holdings Acquisition Co. LP owned and operated brick and mortar casinos); *Clark v. McCormick & Co., Inc.*, No. 1:19-cv-00301-AJS, ECF 99 (W.D. Pa. Jan. 16, 2020) (defendant Spectrum Brands Inc. sold its products in 16 brick-and-mortar retailer outlets across the country). Again, application of Title III to websites having a nexus to a physical space is consistent with Third Circuit precedent.

When considering Title III claims against websites, this Court has applied a control test first set out in *Gniewkowski*. This Court factually distinguished *Ford* and *Peoples* because in those cases, the defendants did not have "ownership or possession, or exercise control" of the property where the alleged discrimination occurred. 251 F. Supp. 3d at 918. Conversely, this Court held that because the defendant in *Gniewkowski* owned or controlled the website where the alleged discrimination occurred, *Ford* and *Peoples* were inapplicable, and the defendant bank's website was a place of public accommodation. *Id.*

This Court has applied the *Gniewkowski* test in subsequent cases concerning websites and found that plaintiffs state a viable claim when they allege the defendant "owns, operates and controls the property" where the alleged discrimination occurs. *West v. Docusign, Inc.*, No. 19cv0501, 2019 U.S. Dist. LEXIS 138379, at *12 (W.D. Pa. Aug. 15, 2019); *see also Douglass v.*

*'47 Brand, LLC*, No. 2:20-cv-00491-AJS, ECF 126 (W.D. Pa. Aug. 6, 2020); *Douglass v. '47 Brand, LLC*, No. 2:20-cv-00491-AJS, ECF 92 (W.D. Pa. July 8, 2020).

Other courts in this circuit have acknowledged the importance of the nexus approach outlined by the Third Circuit Court and particularly note a divide in the Eastern and Western Districts of Pennsylvania. *Murphy v. Bob Cochran Motors, Inc.*, No. 1:19-cv-00239, 2020 U.S. Dist. LEXIS 139887, at *19-20 (W.D. Pa. Aug. 4, 2020). The court in *Bob Cochran Motors* ultimately found "it is unnecessary to resolve which of the [ADA website] analytical frameworks best conforms to the language and intent of the ADA because the allegations of Murphy's Amended Complaint state a claim under either." *Id.* at *20.

### III. The Claims Against William Painter Should be Dismissed Because William Painter Has No Nexus to a Physical Place of Public Accommodation.

"The purpose of Title III of the ADA, is 'to bring individuals with disabilities into the economic and social mainstream of American life . . . in a clear, balanced, and reasonable manner.'" *Gniewkowski*, 251 F. Supp. 3d at 916 (citing *Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994)) (internal quotations omitted).

The primary prohibition of Title III states "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (Lexis 2021). Title III's definitions section provides:

> "The following private entities are considered public accommodations for purposes of this [Title III] if the operations of such entities affect commerce—
> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and

6

that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
(B) a restaurant, bar, or other establishment serving food or drink;
(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
(D) an auditorium, convention center, lecture hall, or other place of public gathering;
(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
(G) a terminal, depot, or other station used for specified public transportation;
(H) a museum, library, gallery, or other place of public display or collection;
(I) a park, zoo, amusement park, or other place of recreation;
(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7) (Lexis 2021).

Even if the purpose of the ADA is broad, this neither requires nor allows a court to broaden the scope of a statute far beyond its text. *Yates v. United States*, 574 U.S. 528, 543 (2015) ("we rely on the principle of *noscitur a sociis*—a word is known by the company it keeps—to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.") (internal quotations removed).

In *Ford*, the Third Circuit Court held that "[t]he plain meaning of Title III is that a public accommodation is a place." 145 F.3d at 612. "Furthermore, the 'goods, services, facilities, privileges, advantages, or accommodations' concerning which a disabled person cannot suffer discrimination *are not free-standing concepts but rather all refer to the statutory term 'public accommodation'* and thus to what these places of public accommodation provide. Ford cannot

7

point to these terms as providing protection from discrimination *unrelated to places*." *Id.* at 613 (emphasis added). Because the plain meaning of Title III and public accommodation was clear to that court, it found it unnecessary to address the legislative history of the ADA. *Id.* at 613.

The Third Circuit Court further acknowledged "by aligning ourselves with the Sixth Circuit's *Parker* decision regarding the definition of 'public accommodation[,]' we part company with the First Circuit in this regard." *Id.* at 613-14. The court then went on to disapprove the First Circuit's decision in *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994), reasoning that if the First Circuit did find the text of the ADA ambiguous, it should have applied the principle of *noscitur a sociis* and, by reference to the enumerated public accommodations in the statutory text, found that public accommodations are limited to physical spaces. *Id.* at 614; *see also Parker*, 121 F.3d at 1014.

a. <u>The Complaint Shows that William Painter is Not Covered Within the Text of Title III.</u>

Title III prohibits discrimination by a defendant "who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Thus, the defendant's status as a place of public accommodation is a necessary prerequisite to imposing liability under Title III. Under the *Gniewkowski* test, a defendant may be subject to Title III liability if it owns, operates, or controls the property where the alleged discrimination occurs. 251 F. Supp. 3d at 918; *see also Bob Cochran Motors, Inc.*, 2020 U.S. Dist. LEXIS 139887, at *20 (interpreting the test outlined in *Gniewkowski* and its progeny).

Under the text of the ADA, the defendant must own, lease, or operate *a place of public accommodation*. 42 U.S.C. § 12182(a). On the contrary, the *Gniewkowski* test imposes liability on a defendant who owns, leases, or operates *the property where the alleged discrimination occurs*.

As Title III is written, it is not the mere ownership or control of *property*, but the ownership or control of a *place of public accommodation*, where discrimination occurs that gives rise to liability.

A public accommodation is defined in the text of the ADA, and as many courts including the Third Circuit Court have recognized, is limited in scope. Plaintiff misapplies the *Gniewkowski* test to be so broad as to reach beyond the lawfully regulated scope of commerce.

As interpreted by the Plaintiff, the *Gniewkowski* test creates a circular logic to finding that a defendant is a place of public accommodation, and Plaintiff's reading of *Gniewkowski* incorrectly stretches to make every business in the United States with a website subject to the ADA. Plaintiff believes that if a defendant engages in conduct on their property which would be prohibited if said property were a place of public accommodation, then said property becomes a place of public accommodation. This reading is contrary to the text of Title III because the defendant's status as a place of public accommodation is a necessary condition for the alleged discrimination being prohibited in the first place. The prohibition on discrimination is not the trigger for application of Title III to a defendant allegedly engaged in such conduct regardless of the nature of the defendant's business and property.

Because Plaintiff's interpretation of the *Gniewkowski* test expands the scope of Title III far beyond its text and erases a necessary prerequisite for its application, this case presents an opportunity to clarify the holding in *Gniewkowski*, which should result in dismissal of this case.

b.  <u>The Third Circuit Court's Interpretation of Title III Requires Claims Against William Painter to Be Dismissed.</u>

The Third Circuit Court has endorsed the interpretation that a place of public accommodation is a physical space and that a nexus to such physical space is required for application of Title III. *Ford*, 145 F.3d at 612; *Peoples*, 387 F. App'x, at 183; *Menkowitz*, 154 F.3d at 120. While these cases can be factually distinguishable, the reasoning presented by the Third

9

Circuit Court suggests that a website absent a nexus to a physical space is not a place of public accommodation under Title III.

In *Ford*, the Third Circuit Court explained that the majority of those enumerated places of public accommodation under Title III were physical spaces. 145 F.3d at 614 ("The litany of terms, including 'auditorium,' 'bakery,' 'laundromat,' 'museum,' 'park,' 'nursery,' 'food bank,' and 'gymnasium[]' refer to places with resources utilized by physical access.") (citing 42 U.S.C. § 12181(7)(D)-(F), (H)-(L).). "Accordingly, we do not find the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical access or even to be ambiguous as to their meaning." *Id.* While *Ford* did not address access to a website, the Third Circuit made it clear in no uncertain terms that it considers "public accommodations" under Title III to be physical spaces. Should this question be presented to the Third Circuit again, nothing suggests it would reverse this position. *See Peoples*, 387 F. App'x 183 (declining to extend or overrule *Ford*).

Assuming *arguendo* the Third Circuit Court would reconsider the scope of Title III, its prior analysis and the analysis of its sister circuits do not support finding that a website absent a physical nexus is a public accommodation. The canon of statutory interpretation *noscitur a sociis* means that "a word is known by the company it keeps." *See Yates v. United States*, 574 U.S. at 543; s*ee also Magee*, 833 F.3d at 534. Courts in other circuits applying this canon have held that, because the general categories of public accommodations are surrounded by lists of physical places, Title III is limited to physical places. *See Magee*, 833 F.3d at 534; *see also Parker*, 121 F.3d at 1014.

The Third Circuit Court endorses the use of *noscitur a sociis* in *Ford* when discussing the First Circuit's decision in *Carparts*. The Third Circuit Court stated that "[p]ursuant to the doctrine of *noscitur a sociis*, the terms that the First Circuit finds ambiguous should be interpreted by

reference to the accompanying words of the statute. . . ." *Ford*, 145 F.3d at 614 (internal citation omitted). *Ford* further suggests that, had the Circuit Court applied the cannon, it would have concluded that public accommodations are limited to physical spaces. *Id.* There is nothing to suggest that if confronted with the question again, the Third Circuit Court would not apply the *noscitur* canon, or that in applying the canon would reach a different result than other circuits which have determined a public accommodation is limited to physical spaces.

Moreover, the Third Circuit Court "aligned [itself] with the Sixth Circuit's *Parker* decision regarding the definition of "public accommodation."" *Ford*, 145 F.3d at 613-14. In *Parker*, the Sixth Circuit stated "[t]he clear connotation of the words in § 12181(7) is that a public accommodation is a physical place." *Parker*, 121 F.3d at 1014. "As is evident by § 12181(7), a public accommodation is a physical place," under Sixth Circuit precedent. *Id.* at 1010-11 (citing *Stoutenborough v. National Football League, Inc.*, 59 F.3d 580 (6th Cir. 1995), *cert. denied*, 516 U.S. 1028 (1995)). The Third Circuit Court has expressly aligned itself with the Sixth Circuit on this issue, and nothing suggests the Third Circuit Court would retreat from this alignment if the question were presented to it anew.

The reasoning espoused by the Third Circuit Court on the scope of Title III compels the conclusion that a public accommodation is limited to a physical space. Thus, to the extent that the Plaintiff's reading of the *Gniewkowski* test permits application of Title III to websites without a nexus to a physical space, it is inconsistent with Third Circuit case law. Therefore, *Gniewkowski* should be read in harmony with the Third Circuit Court's precedent.

c.  <u>There is No Nexus Between the Website and a Physical Place of Public Accommodation.</u>

In order to be subject to Title III, a website must have a nexus to a physical space, as recognized by the Third Circuit Court and the majority of other circuit courts. Plaintiff, in his

11

Complaint, admits that William Painter has no physical retail outlets and operates solely through the Website, selling sunglasses to customers only via the Website. Doc. No. 1 at ¶ 23-4. Because William Painter does not operate physical stores, there is no nexus to a place of public accommodation, and this Court should find that neither William Painter nor the Website is subject to Title III. Accordingly, this Court should dismiss the Complaint for failure to state a claim upon which relief may be granted.

William Painter recognizes that two decades of digital evolution separate this case from the enactment of Title III. In Title III, Congress enumerated a list of covered entities which it recognized as exhaustive. *See Magee*, 833 F.3d at 535 (examining legislative history). A website standing alone does not appear on that list. Finding that a website without a nexus to a physical place of public accommodation is subject to Title III reads into the statute an entirely new category of covered entity. Doing so would impose massive new regulatory burdens on actors Congress did not contemplate. Congress has never extended the definition of covered entities in a manner showing that a business such as William Painter, a small company that sells sunglasses online with no physical presence, has obligations under Title III. Because Title III, as written and interpreted by the Third Circuit Court, does not cover the Website, this Court should dismiss the Complaint for failure to state a claim.

## CONCLUSION

Plaintiff relies on a tortured reading of *Gniewkowski*, a case regarding a brick-and-mortar bank, to attempt to stretch this Court's opinion beyond the bound of reason (and constitutional limits) to encompass an online-only seller with no physical presence. Under the Third Circuit Court's nexus test, William Painter's Website is not a place of public accommodation subject to

Title III because it lacks a nexus to a physical space, and this matter is well distinguishable from *Gniewkowski*. Thus, Plaintiff's Complaint should be dismissed.

Respectfully submitted,

*/s/ Adam Losey*
Adam Losey
Florida Bar No. 69658
(admitted pro hac vice)
Losey PLLC
1420 Edgewater Drive
Orlando, FL 32804
(407) 906-1605
alosey@losey.law

*Counsel for Defendant William Painter Inc.*
